**E-FILED on** 03/31/2011

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HAI NGUYEN,<br><br>        Petitioner,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Respondent. | No. C-08-4405 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND/OR REMAND<br><br>**[Re Docket Nos. 15, 16]** |

      Plaintiff Hai Thi Nguyen seeks reversal of a decision by defendant Commissioner of Social Security ("Commissioner") denying her disability insurance benefits. Plaintiff and defendant filed cross-motions for summary judgment. Plaintiff alleges that the ALJ's finding that she had the ability to perform past work is not supported by substantial evidence and was reached by improper application of law.

      Pursuant to this court's procedures for review of social security actions, the parties' motions have been submitted without oral argument. Based on the moving and responding papers and the court's analysis of the entire record, the court grants defendant's cross-motion for summary judgment and denies plaintiff's motion for summary judgment and/or remand.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND/OR REMAND—No. C-08-4405 RMW
JLR

United States District Court
For the Northern District of California

# I. BACKGROUND

## A. Plaintiff's Vocational and Medical History

Plaintiff was born on April 12, 1948 and, therefore, was 53 years old as of the alleged onset date of disability on September 1, 2001. Administrative Transcript ("Tr.") 11, 370. She obtained a second or third grade education in Viet Nam and does not speak English. Tr. 108, 370-71. Plaintiff worked as an electronics assembler and disc cleaner from 1995 until September 2001. Tr. 83. She has not worked since September 2001. Tr. 372.

On January 7, 2002, plaintiff went to the emergency room at Santa Clara Valley Medical Center ("SCVMC") for worsening headaches, dizziness and tingling in her hands. Tr. 357-61. A diagnostic imaging consultation showed that intra-cranial contents were normal. Tr. 361. In June 2002, Longhang Nguyen, M.D. ("Dr. Nguyen") at SCVMC prescribed Paxil for treating headaches, dizziness and insomnia. Tr. 266. In May 2002, plaintiff's headaches and dizziness worsened and she felt numbness in both of her hands. Tr. 254. In June 2003, Faith Langlois-Dul, Psy.D. ("Dr. Langlois-Dul"), a clinical neuropsychologist, evaluated plaintiff at Dr. Nguyen's request and conducted a Kaplan Baycrest Neurocognitive Assessment. Tr. 355. Dr. Langlois-Dul observed that plaintiff needed repetition of instructions several times and had some symptoms associated with anxiety. Tr. 355-56. Under the "impressions" section of her report, Dr. Langlois-Dul's concluded that "(a)lthough cultural and language issues, anxiety and pain may partially account for her performance on these tests, her deficits are rather significant and she met criteria for a Cognitive Disorder N.O.S."[1] Tr. 356.

---

[1] "Cognitive Disorder Not Otherwise Specified" describes a disorder that is characterized by cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition that does not meet the criteria for specific deliriums, dementias, or amnestic disorders. *See* Diagnostic and Statistical Manual of Mental Disorders DSM-IV at 294.9.

In August 2003, psychiatrist Nhi Yen Huynh, M.D. ("Dr. Huynh") began treating plaintiff and diagnosed her with dysthymia[2] and somatoform disorder N.O.S.[3] Tr. 192. Dr. Huynh also measured a Global Assessment of Functioning (GAF) score of 50 for the year leading up to and including the test date. *Id.* In a July 2007 examination by Dr. Huynh, plaintiff reported that she continued to be depressed with poor concentration, poor memory, feelings of helplessness and worthlessness, and low interest in social activities. *Id.* at 273-76.

On October 9, 2006, Paul Carella, Ph.D ("Dr. Carella"), a clinical psychologist, acting on behalf of the Social Security Administration, performed a consultative psychological evaluation of plaintiff. *Id.* at 155-57. Dr. Carella concluded:

> While she performed poorly on several tasks, her level of performance did not appear consistent with the level of cognitive functioning demonstrated on interview and in collection of historical information. While depression appears apparent, her level of depression does not appear to impair her ability to understand and to follow simple instructions. She appeared capable of understanding and relating in a cogent and effective manner.

*Id.* at 156.

On October 10, 2006, Clark Gable, M.D. ("Dr. Gable"), an internist, on behalf of the Social Security Administration, conducted a consultative medical examination of plaintiff. *Id.* at 158-60. Dr. Gable noted that plaintiff's mood was "up," with appropriate affect and no delusions. *Id.* at 158. Moreover, plaintiff was coherent and goal oriented. *Id.* Dr. Gable also noted that plaintiff's muscles were well developed, her grip strength was normal, and she could walk on her heels and toes. *Id.* at 159. In addition, Dr. Gable reported hypertension under fair control, depression with insomnia, fatigue and memory problems, and probable benign positional dizziness. *Id.* Dr. Gable believed that plaintiff could sit up to six hours a day with usual breaks, stand, and walk for a like period. *Id.* at

---

[2] Dysthymia is a type of low-grade depression. *See* Diagnostic and Statistical Manual of Mental Disorders DSM-IV at 300.4.

[3] A somatoform disorder is a mental disorder characterized by physical symptoms that suggest physical illness or injury - symptoms that cannot be explained fully by a general medical condition, direct effect of a substance, or attributable to another mental disorder (i.e. panic disorder). The symptoms that result from a somatoform disorder are due to mental factors. In people who have a somatoform disorder, medical test results are either normal or do not explain the person's symptoms. *See* Diagnostic and Statistical Manual of Mental Disorders DSM-IV at 300.81.

1  160. He also noted that plaintiff could lift, push or pull 20 pounds frequently and 40 occasionally,
2  and there were no problems with fine finger and hand movements. *Id.*

3   On October 26, 2006, Sadda Reddy, M.D. ("Dr. Reddy") conducted a Physical Residual
4  Functional Capacity ("RFC") Assessment, finding that there was no objective basis for exertional
5  limitations. Tr. 147. Dr. Reddy reported that plaintiff was limited to occasional balancing and
6  precluded from climbing ladders/ropes/scaffolds and should avoid concentrated exposure to hazards
7  because of her postural dizziness. Tr. 149-50. Moreover, Dr. Reddy noted that there was no
8  longitudinal record of treatment to support the alleged severity of headaches. Tr. 147. Dr. Reddy
9  also noted that during the motor examination, plaintiff got on and off the examining table with no
10 complaints of dizziness. *Id.* According to Dr. Reddy, no established medically determinable
11 impairment accounted for the alleged dizziness. Tr. 147-48. Furthermore, Dr. Reddy found no
12 evidence of peripheral neuropathy. Tr. 147.

13   On November 3, 2006, Glenn Ikawa, M.D. ("Dr. Ikawa"), whose specialty is not clear from
14 the record but presumably mental health, reviewed plaintiff's case and reported that plaintiff had mild
15 restrictions of activities of daily living; mild difficulties in maintaining social functioning; and mild
16 to moderate difficulties in maintaining concentration, persistence or pace because of her depressive
17 disorder N.O.S. *Id.* at 125, 129, 132. He also indicated moderate limitation in the ability to
18 understand, remember and carry out detailed instructions. *Id.* at 139. Dr. Ikawa's assessment was
19 reviewed and approved by Archimedes Garcia, M.D., a psychiatrist. *Id.* at 127.

20   In December 2007, Dr. Huynh assessed a GAF of 55, which was 5 points higher than
21 plaintiff's GAF score from the previous year. *Id.* at 348. In assessing plaintiff's mental residual
22 functional capacity, Dr. Huynh concluded that plaintiff would be unable to meet competitive
23 standards in maintaining attention for two hour segments, maintaining regular attendance, sustaining
24 an ordinary routine without special supervision, and performing consistently on the job. *Id.* at 350-
25 51. He further concluded that plaintiff would be unable to perceive normal hazards and take
26 appropriate precautions; understand, remember and carry out detailed instructions; deal with the
27 stress of semi-skilled and skilled work; and travel to unfamiliar places. *Id.* Dr. Huynh considered
28 plaintiff to be seriously limited but not precluded from remembering work-like procedures, working

in coordination with or proximity to others without being unduly distracted, completing a normal workday/week without interruptions from psychologically-based symptoms, responding appropriately to changes in a routine work setting and dealing with normal work stress. *Id.*

In a hearing before an Administrative Law Judge ("ALJ") on January 18, 2008, plaintiff testified that she had pain from her shoulder down to her hands. *Id.* at 374-75. Plaintiff also testified that her hands felt numb. *Id.* She claimed that the hospital suggested an operation, but she refused. *Id.* at 156. No medical records appear to confirm that such a recommendation was made. However, in September 2004, a nerve conduction study showed "moderately severe bilateral carpal tunnel syndrome, slightly worse on the right than the left." Tr. 238. Plaintiff also testified that her depression impacted her memory and ability to concentrate significantly. *Id.* at 376.

Plaintiff has been taking Atenolol for high blood pressure, Simvastatin for high cholesterol, Choline Sal/Mag as a vitamin, and Paroxetine (Paxil) for depression. *Id.* at 124.

### B. Procedural Background

On July 21, 2006, plaintiff filed her applications for disability benefits. *Id.* at 58-60. Plaintiff initially alleged disability beginning September 1, 2001, but later amended her alleged disability onset date to September 30, 2002. *Id.* at 11. After her applications were denied, plaintiff filed a timely written request for hearing on April 30, 2007. Plaintiff's testimony was taken at a January 18, 2008 hearing before the ALJ. In a decision issued on March 18, 2008, the ALJ determined that plaintiff was not disabled. *Id.* at 13-18. Plaintiff filed a request for review with the Appeals Council and on July 16, 2008, the Appeals Council denied her appeal, making the decision of the ALJ the final decision of the Commissioner. *Id.* at 3-5. Subsequently, plaintiff filed a civil action with this court.

## II. LEGAL STANDARD

### A. Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying plaintiff benefits. Under section 405(g), a district court reviewing the Commissioner's decision on an application for benefits may affirm, reverse, or remand. *See Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir.

1993)). However, the district court's scope of review is limited. The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. 42 U.S.C. § 405(g) (2009); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir. 1997). To determine whether substantial evidence supports the Commissioner's findings, this court must review the administrative record as a whole, weighing evidence that both bolsters and detracts from the Commissioner's conclusion. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where the evidence is susceptible to more than one rational interpretation, this court must adopt the decision of the ALJ. *Sandgathe*, 108 F.3d at 980. "However, even though the findings be supported by substantial evidence, the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Benitez v. California*, 573 F.2d 653, 655 (9th Cir. 1978) (internal quotations and citations omitted).

### B.     Standard for Determining Disability

To qualify for disability benefits under the Social Security Act, the claimant must be "disabled" within the meaning of the Act. Under the Act, disability means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to last for a continuos period of not less than twelve months. *Ukolov v. Barnhart,* 420 F.3d 1002, 1004 (9th Cir. 2005). The claimant has the burden of proving that he is unable to perform past relevant work. *Id*. Where the claimant meets this burden, a prima facie case of disability is established. *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work that exists in the national economy. *Id.*

Social Security Disability cases are evaluated using a five-step, sequential evaluation process. 20 C.F.R. § 404.1520. In the first step, the ALJ must determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.


In step two, the ALJ must determine whether the claimant has an impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(c). If the claimant's impairment is not severe, the claimant is not disabled and is not entitled to disability benefits, but if the impairment or combination of impairments is severe, the evaluation proceeds to step three.

In step three, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If the claimant's condition meets or exceeds the requirements of a listed impairment, the claimant is disabled. If not, the analysis proceeds to step four.

At step four, the ALJ must first determine the claimant's residual functional capacity in view of the claimant's impairments and the relevant medical and other evidence in the record, and then determine whether the claimant is able to do any work that he previously performed in the past. If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 404.1520(e) and (f).

At step five, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled. Taking into account a claimant's age, education, vocational background, and residual functional capacity, the Commissioner must show that the claimant can perform some work that exists in significant numbers in the national economy. This can be shown either by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines ("grids"). *Tackett*, 180 F.3d at 1101; 20 C.F.R. § 404.1520(g)(1).

## III. ANALYSIS

Plaintiff alleges that the ALJ: (1) improperly discounted the opinion of Dr. Huynh, the treating psychiatrist; (2) improperly discounted the opinion of Dr. Langlois-Dul, an examining physician; (3) improperly discounted plaintiff's statements about her symptoms and limitations; (4) made unsupported and improperly reached findings with regard to plaintiff's RFC, both mental and physical; and (5) made the determinative finding that plaintiff could perform her past work as an electronics assembler and cleaner without substantial supporting evidence.

### A.     Dr. Huynh's Opinion

Plaintiff contends that the ALJ improperly discounted Dr. Huynh's opinion regarding plaintiff's functionality.  Specifically, plaintiff contends that the ALJ had no "clear and convincing" reasons for discounting Dr. Huynh's opinion, especially since Dr. Huynh was plaintiff's treating psychiatrist.  In response, defendant asserts that the ALJ gave specific and legitimate reasons for discounting Dr. Huynh's opinion, including the fact that it was contradicted by the opinions of other doctors.

In a Social Security Disability case, an ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted.  *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1194-95 (9th Cir. 2004); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If the treating physicians's opinion is not contradicted, then it may be rejected only for clear and convincing reasons supported by substantial evidence in the records.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  If the treating physician's opinion is contradicted, the ALJ must still provide specific and legitimate reasons supported by substantial evidence in the records for rejecting it.  *See Winans v. Bowen*, 883 F.2d 643, 647 (9th Cir. 1987).

In this case, Dr. Huynh's opinion was contradicted.  Dr. Huynh opined that plaintiff would have difficulty with or was unable to perform several mental work-related activities such as sustaining an ordinary routine without special supervision.  Tr. 348-352.  In contrast, Drs. Carella, Ikawa and Garcia found that plaintiff was not significantly limited and could perform simple work. *Id.* at 125-145, 156.

The ALJ provides specific and legitimate reasons for discounting Dr. Huynh's opinion. Although a treating physician's opinion is generally given more weight than a non-treating physician's, the weight to be afforded depends on how well supported it is and how consistent it is with the recorded evidence.  *See* 20 C.F.R. § 404.1527 (d)(2), (3), (4).  When evaluating conflicting medical opinions, an ALJ need not accept the opinion of any physician, including a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  In this case, the ALJ determined that Dr.

Huynh's opinion regarding work restrictions was based on the claimant's subjective characterizations of her symptoms which were not entirely credible. *See Bray v. Astrue*, 554 F.3d 1219, 1228 (9th Cir. 2009) (holding that the ALJ was reasonable in discounting a treating physician's prescribed work restrictions where the restrictions were based on the claimant's subjective characterization of her symptoms which were not credible). Dr. Huynh's treatment records are essentially devoid of any mental status examination findings. When plaintiff subjectively complained to Dr. Huynh of forgetfulness, helplessness and social withdrawal, Dr. Huynh opined that she was unable to work "due to poor concentration and poor initiative," without apparently doing any objective testing of her concentration. Tr. 272. And on a mental RFC form, Dr. Huynh states that the "clinical findings," including results of medical examination, demonstrate that plaintiff had "limited concentration, poor memory" and "lack of interest in daily things." But throughout the record, Dr. Huynh's notes only reflect plaintiff's subjective complaints, not clinical findings. *Id.* at 164-344. Other than merely disagreeing with the ALJ's analysis, plaintiff does not point to any clinical findings within Dr. Huynh's treatment records which support the mental limitations assessed. What's more, Dr. Huynh's treatment records lack mental status examination findings. *Id.* at 166-192, 288-346. Even though Dr. Huynh's medical opinion characterizes plaintiff's symptoms as "clinical findings," they appear based almost entirely upon plaintiff's subjective complaints. Dr. Huynh does not cite to test findings made in connection with Dr. Langlois-Dul's testing.

    The ALJ also correctly discounted Dr. Huynh's opinion because it was inconsistent with the level of treatment provided. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that the ALJ provided adequate reasons for discounting a physician's disability opinion treatment where the physician had prescribed a conservative course of treatment). Dr. Huynh prescribed conservative treatment consisting of only one medication (Paxil) directed at her mental health symptoms. *Id.* at 166-192, 288-301, 310-346. As the ALJ noted, "[s]uch treatment is inconsistent with the medical response that would be expected if physicians found symptoms and limitations to be as severe as alleged" by the plaintiff. *Id.* at 17.

    Plaintiff also contends that a GAF from 50 to 55 is commensurate with disability and thus supported Dr. Huynh's opinion that she was "unable to meet competitive standards" of work. A GAF

score is not essential to the disability determination. *See Howard v. Comm's of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Morever, GAF scores are not "medical opinions of disability"; instead, they represent a generalized description of the claimant's level of psychological symptoms. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000). The Ninth Circuit has held that GAF scores as low as 40 are not disabling. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Thus, plaintiff's GAF score of 50 to 55 does not automatically suggest a finding that plaintiff is disabled and unable to work.

In sum, the court finds that the ALJ gave specific and legitimate reasons supported by substantial evidence for discounting Dr. Huynh's opinion.

**B.     Dr. Langlois-Dul's Opinion**

Plaintiff contends that the ALJ improperly discounted Dr. Langlois-Dul's opinion that plaintiff suffers from a Cognitive Disorder N.O.S. In response, defendant argues that because Dr. Langlois-Dul did not offer any opinion regarding plaintiff's functional abilities, the ALJ could not accept or reject mere "impressions" and "recommendations." According to Dr. Langlois-Dul's tests, plaintiff demonstrated "impulsive behavior" and required "repetition of instructions several times," had significant difficulty with "bilateral alternating movements" and "generating and shifting cognitive sets," but was able to produce "simultaneous movements only." Tr. 355. Dr. Langlois-Dul concluded that plaintiff met criteria for a Cognitive Disorder N.O.S. This conclusion was partially based on plaintiff's subjective statements that she experienced symptoms which may be associated with anxiety, dizziness, numbness, and difficulty with sleep. While Dr. Langlois-Dul found that plaintiff's performance on testing supported a diagnosis of a Cognitive Disorder N.O.S., Dr. Langlois-Dul did not give an opinion as to whether plaintiff was able to work. Morever, plaintiff failed to show that a Cognitive Disorder N.O.S. would prevent her from working. Therefore, the ALJ did not err in failing to specifically comment on Dr. Langlois-Dul's assessment.

**C.     Credibility of Plaintiff's Statements**

Plaintiff next challenges the ALJ's rejection of her subjective statements regarding her symptoms and limitations. In response, defendant argues that the ALJ gave clear and convincing reasons for discounting plaintiff's credibility.

The ALJ conducts a two-step analysis to assess subjective testimony wherein, under step one, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptoms. *Smolen v. Chater,* 80 F.3d 1273, 1281-82 (9th Cir. 1996). If the claimant meets this threshold and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281, 1283-84. The ALJ must make a credibility determination with findings sufficiently specific for the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *See Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). An ALJ is also permitted to consider ordinary techniques for credibility evaluation, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and to make inferences "logically flowing from the evidence," *Macri v. Chater*, 93 F.2d 540, 544 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence in the records, a court "may not engage in second-guessing." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

In this case, the ALJ gave specific, clear and convincing reasons for discounting plaintiff's testimony. The ALJ noted that the doctors treated plaintiff's alleged impairments conservatively despite plaintiff's complaint's about the intensity, persistence and limiting effect of plaintiff's reported symptoms. Evidence of conservative treatment, alone, is sufficient to discount credibility. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Notably, the only medication ever prescribed for treatment of any of plaintiff's allegedly disabling symptoms was the prescription of Paxil for depression. The conservative treatment of plaintiff seems inconsistent with plaintiff's description of her symptoms and limitations such as dizziness, depression, bilateral arm pain, and numbness. In sum, the ALJ properly concluded that plaintiff's treatment regime was routine and conservative and therefore, inconsistent with plaintiff's subjective statements. Dr. Carella noted her level of

performance did not appear consistent with the level of cognitive functioning demonstrated on interview.

### D. ALJ's Findings on RFC

Plaintiff next contends that the ALJ's findings on RFC, both mental and physical, are unsupported and improperly reached. RFC is the most a claimant can still do despite her limitations, and is based on all the relevant evidence in the case record. *See* 20 C.F.R. § 404.1545 (a) (2003). It is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity. 20 C.F.R. § 404.1545 (2003). Here, the ALJ found that depression and carpal tunnel syndrome are medically determinable impairments that could reasonably produce plaintiff's pain or other alleged symptoms. However, the ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms lacked credibility. Tr. 17. In turn, after considering the entire record, the ALJ concluded that plaintiff has the RFC to perform a full range of works at all exertional levels with some non-exertional limitations. *Id.* at 14.

Plaintiff submits that the effects of carpal tunnel syndrome were not accounted for in the ALJ's findings. But plaintiff overlooks that the carpal tunnel syndrome diagnosis does not necessarily mean that plaintiff cannot work. A claimant bears the burden of proving that an impairment is disabling. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). To be sure, a September 2004 nerve conduction study showed that plaintiff had "bilateral focal median neuropathies" assessed as "bilateral moderately severe carpal tunnel syndrome." Tr. 238. But "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews*, 10 F.3d at 680. Here, plaintiff cited only to a diagnosis without citing clinical findings which confirm that her symptoms impaired her ability to work. Neither did plaintiff cite any clinical examination findings which supported additional upper extremity limitations. What's more, Drs. Gable and Reddy specifically examined plaintiff's finger and hand movements and opined that plaintiff had no upper extremity limitations. Tr. 146-54, 159-60. Therefore, considering the uncontested medical records and plaintiff's credibility, as well as plaintiff's burden of proving an impairment that is disabling, the ALJ's conclusion that plaintiff had the RFC to perform a full range of work at all exertional levels is supported by substantial evidence.

Furthermore, the ALJ followed the "special technique" under 20 C.F.R. § 404.1520(a) to evaluate plaintiff's mental RFC. The special technique outlines the four broad functional areas known as the "B criteria": activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520(a), (c)(3). The ALJ found that plaintiff had mild restriction of daily activities and social functioning; mild to moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. Tr. 14. The ALJ's determinations were based on consideration of the medical records and the opinions of Drs. Reddy, Carella, and Ikawa. At bottom, plaintiff has failed to cite any clinical examination findings which would support her claimed limitations.

### E.     Ability to Perform Past Work

Lastly, plaintiff argues that the ALJ improperly reached the conclusion that plaintiff could perform her past work. Specifically, plaintiff argues that although her past work is "unskilled" and "light," she could not meet the demand of "pace" due to her "mild to moderate difficulties in maintaining concentration, persistence or pace." Tr. 17. In response, defendant contends that the ALJ was correct in determining that plaintiff could perform her past unskilled work as an electronics assembler and cleaner of electronic parts.

Here, plaintiff's past work as a cleaner of electronic parts and an electronics assembler included cleaning discs and putting stickers on boxes. She did not use machines, tools, equipment, technical knowledge or skills, nor did she write or complete reports in either position. *Id.* at 84-85. Plaintiff worked for 8 hours a day and 40 hours a week in standing positions.[4] *Id.* Morever, plaintiff did not supervise other people. *Id.* Both of plaintiff's jobs are unskilled under 20 C.F.R. § 404.1568(a) because they "need little or no judgment to do simple duties that can be learned on the job in a short period of time." Plaintiff's moderate mental limitations do not conflict with simple duties. Indeed, plaintiff's past job duties were unlikely to produce tension and anxiety since she was not required to work precisely in a fast-paced environment, concentrate constantly, make independent judgments or work closely with other people. Although plaintiff testified that she was fired because

---

[4] Contrary to the work history report, plaintiff testified that the electronic assembler position was performed sitting. Tr. 372.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND/OR REMAND—No. C-08-4405 RMW
JLR                                                                13

she took too many breaks at work and could not complete her tasks, that does not mean she does not have the capacity to do the work. Dr. Gable's opinion suggests plaintiff could perform her past work as its requirements are well within her physical capacities. Tr. 160. Accordingly, the ALJ's conclusion that plaintiff could perform her past work with her non-exertional limitations is supported by substantial evidence.

### III. ORDER

For the foregoing reasons, court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for summary judgment or remand.

DATED:    03/31/2011

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge